UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TANYA DAWN TARWACKI, | |
| Plaintiff, | |
| v. | Case No. 3:14-cv-1735-JVB-CAN |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

Tanya Dawn Tarwacki seeks judicial review of the Commissioner's decision denying her disability benefits, and asks this Court to reverse the administration's decision or, alternatively, remand the case to the agency for reconsideration.

**A.     Facts**

Tarwacki is forty-one years old. (R. at 263.) She applied for social security benefits on November 28, 2011, claiming that she became disabled a month earlier. (Pl.'s Br. at 2.) Tarwacki contends that she can no longer work as a cashier, retail manager, donut maker, or poster maker because of various health conditions, including cervical spinal stenosis, degenerative disc disease in her lumbar spine, and degenerative joint disease in her knees. *Id.* Additionally, she complains of chronic and severe headaches. *Id.*

Tarwacki's relevant medical history begins on December 23, 2008, when she received magnetic resonance imaging of her spine. (R. at 204.) The MRI showed degenerative disc disease, an annular tear, disc protrusion, and broad-based disc bulging. *Id.* On October 27, 2010,

Dr. Kevin Drew, a pain specialist, examined Tarwacki. (R. at 239.) His examination indicated that she could balance, bend, walk (including on her heels and toes), sit, and stand without assistance. *Id*. Dr. Drew also found that Tarwacki maintained a functional range of motion in her lower back, hips, knees, and ankles. *Id*. An MRI taken three days later confirmed moderate disc protrusion, broad-based disc bulging, and canal stenosis. (R. 202.)

On February 7, 2012, Dr. Saurabh Joneja, a state-consulting physician, examined Tarwacki and found that despite "significant degenerative disc disease" she could sit, stand, and walk without assistance. (R. at 224–25.) In addition, Dr. Joneja found that Tarwacki could use her arms and hands for "fine and gross manipulati[on]." (R. at 225.) Three weeks later, Dr. M. Brill, also retained by the state, assessed Tarwacki's residual functional capacity and determined that she could frequently lift, carry, and pull ten pounds, and occasionally twenty pounds. (R. at 244.) Dr. Brill also determined that Tarwacki could stand, walk, and sit for six hours out of an eight hour work-day. *Id*. Last, Dr. Brill concluded that Tarwacki could occasionally climb ramps and ladders, stoop, kneel, crouch, and crawl. (R. at 245.) On May 1, 2012, Dr. M. Ruiz affirmed these findings. (R. at 256.)

On May 16, 2012, Tarwacki saw Dr. Thomas Akre, an orthopedic surgeon, and complained of knee pain. (R. at 263.) After ordering and evaluating an x-ray of her right knee, Dr. Akre diagnosed her with patella chondromalacia and muscle atrophy. (R. at 266.) The following day, Tarwacki received MRI testing of her cervical and lumbar spine. (R. at 268.) The MRIs revealed mild to moderate complications, including disc protrusion, disc bulging, disc herniation, joint hypertrophy, impingements on her cervical cord, spinal stenosis, and spondylosis. (R. at 268, 270–71.)

On June 5, 2012, Dr. Drew examined Tarwacki and determined that she could only sit,

stand, and walk for two hours out of an eight hour work day, and could occasionally lift and pull between six to ten pounds. (R. at 272–73.) Dr. Drew also found that she could not bend, twist, squat, kneel, crouch, stoop, climb ladders, reach above her shoulders, or use her hands for fine manipulation. *Id*. A week later, Tarwacki saw Dr. Stephen Smith, a neurosurgeon, and complained of a troubled gait, difficulty with dexterity, and severe neck pain with radiation down to her arms. (R. at 292.) After examining Tarwacki and reviewing her medical record, Dr. Smith determined that she needed cervical spine surgery, given the loss of strength in her left arm and moderate degree of narrowing and impingements on her spinal cord. *Id*.

In August 2012, Dr. Smith performed surgery on Tarwacki's neck, fusing her cervical spine. (R. at 296.) Still, after the surgery Tarwacki continued to complain about neck, shoulder, and arm pain, and chronic and severe headaches. (Pl.'s Br. at 6–7.) From August 2012 to March 2013, Tarwacki saw Dr. Smith and had additional MRI and x-ray testing. (Pl.'s Br. at 7–8.) These tests showed, among other things, mild spurring, moderate foraminal narrowing of her spine, and positive Hoffman's sign. (Pl.'s Br. at 8.) Yet, the severity of these conditions did not surpass levels reported prior to her surgery. *Id*.

On August 14, 2013, Administrative Law Judge Angelita Hamilton denied Tarwacki's application for disability benefits. (R. at 25.) The ALJ found that Tarwacki's alleged mental and health conditions constituted severe impairments, but found that no condition, alone or in combination, met or equaled any listed in the federal regulations.[1] (R. at 21.) Furthermore, the ALJ determined that Tarwacki's residual functional capacity allowed her to vie for numerous light duty jobs in the national economy. (R. at 24–25.) The ALJ's decision became the final decision of the Commissioner on June 6, 2014, when the Appeals Council denied Tarwacki's

---

[1] Tarwacki also alleged suffering from anxiety and depression, but the ALJ determined that these impairments were not severe. She does not challenge this finding on appeal.

request to review it. (Pl.'s Br. at 1.)

## B. Standard of Review

This Court has authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court must uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The Court will, however, ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

## C. Disability Standard

The Commissioner has established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

A "no" at any step other than step three means that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A "yes" leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Id.* The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## D. Analysis

Tarwacki advances four arguments: (1) the ALJ's credibility determination is not supported by substantial evidence; (2) the ALJ did not give good reasons for not assigning

controlling weight to the opinions of her treating physicians; (3) the ALJ failed to consider her chronic and severe headaches in determining her residual functional capacity; and (4) the record is incomplete as new and material evidence was not considered.

**(1)** *ALJ's credibility determination is supported by substantial evidence*

Tarwacki argues that the ALJ's credibility determination is patently wrong and not supported by substantial evidence. (Pl.'s Br. at 16.) The Court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On appeal, the ALJ's credibility determination is entitled to great deference if she gave "specific reasons" for her finding. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). If her finding rested on "objective factors or fundamental implausibilities," the Court has "greater freedom to review the ALJ's decision." *Clifford*, 227 F.3d at 872.

The Commissioner provides a two-step process for evaluating a claimant's symptoms. SSR 96–7p, at *2. First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id*. (footnote omitted). Second, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*.

Here, the ALJ concluded that Tarwacki's spinal disorders and headaches "could reasonably be expected to cause [her] alleged symptoms," but found that her subjective complaints about the intensity, persistence, and limiting effects of her symptoms were "not fully credible to the extent they [were] inconsistent with [her] residual functional capacity."[2] (R. at

---

[2] The Court acknowledges that a claimant's residual functional capacity finding comes later in an ALJ's decision, not before assessing the claimant's testimony regarding the intensity, persistency, and limiting effect of her

5

21–22.) For support, the ALJ cited Dr. Joneja's opinion:

> She walked with a slow and very guarded gait in the examination room. She used both vocal and nonvocal ques to display signs of excruciating pain throughout her torso. She kept a very stiff posture as she moved about. [Tarwacki] did not require any hand-held assistive devices. She was capable of disrobing and getting in to her examination gown. She did not require any assistance when climbing up onto the examination table, sitting upright, lying back flat. She did move extremely slowly up onto the examination table, and dramatized pain behavior. When asked to walk on her heels and toes, [Tarwacki] stated that she was having too much pain. She tried to maintain a few steps of tandem gait, but demonstrated signs of pain and instability. Her pain behavior and the gait that she demonstrated seemed inconsistent with what was observed as she walked out to a small subcompact vehicle, where her husband had been waiting. She was observed walking at a fast pace, and she entered the vehicle on the passenger side, in what seemed to be a very fluid manner.

(R. at 233.)

The ALJ also noted that when Dr. Drew examined her four months later she was able to walk on her heels and toes and demonstrated brisk reflexes. (R. at 23.) "An ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The record confirms that when observed by her physicians, Tarwacki had no problem ambulating, including on her heels and toes, and maintained a normal gait. (R. at 226–33, 235–37, 239, 345, 355.)

Additionally, the ALJ recognized the inconsistency between Tarwacki's claims for both unemployment compensation and disability benefits. (R. at 23.) "[A] Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work . . . [is] one of many factors adversely impacting credibility."[3] *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). Last, the ALJ identified

---

symptoms. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, this "backwards" reasoning alone is not reversible error so long as the ALJ follows it up with an adequate "explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).
[3] Tarwacki claims for the first time in her reply brief that she sought unemployment benefits because she had no other source of income and was merely trying to keep food on her table and a roof over her head. (Pl.'s Reply Br. at

6

only mild to moderate impairments in the record and highlighted the lack of medical evidence supporting greater limitations. (R. at 23.) An ALJ "may consider [the lack of medical evidence] as probative of the claimant's credibility." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citation omitted). Altogether, the evidence that the ALJ relied on is substantial and raises reasonable doubt about Tarwacki's own testimony concerning the intensity, persistency, and limiting effects of her symptoms.

Tarwacki contends that her allegations are consistent with the record because "she ha[s] always had trouble with her back" and the medical evidence demonstrates that her impairments progressively worsened. (Pl.'s Br. at 17.) Furthermore, Tarwacki argues that her own testimony about the intensity, persistency, and limiting effects of her neck, shoulder, and arm pain is corroborated by her positive Hoffman's sign diagnosis. *Id*. She does not address her alleged gait, inability to ambulate, or complaints of chronic and severe headaches—all of which the ALJ principally relied on to discredit her. (R. at 22–23.) Since parts of the record support Tarwacki's alleged symptoms, and other parts do not, the ALJ's partial credibility finding is affirmed.

**(2)** *ALJ did not give good reasons for weight afforded to treating physicians' opinions*

On this issue, Tarwacki's argument is threefold. First, Tarwacki argues that in rejecting Dr. Smith's opinion, the ALJ improperly "played doctor" by making her own independent medical conclusions. (Pl.'s Br. at 11.) Specifically, Tarwacki takes issue with the ALJ's comment about her neck surgery: "Despite what the undersigned notes as a lack of significant symptomology, [Tarwacki] was recommended to undergo a cervical discectomy and fusion." (R. at 23.) She contends that this comment alone is reversible error. (Pl.'s Br. at 11.) The Court

---

8.) "This [s]he cannot do." *Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989). In addition to new arguments, a claimant cannot raise "new factual matters" for the first time in her reply brief. *Id*.

7

disagrees. Even when the ALJ "plays doctor," the Court will only reverse her decision if she "failed to address relevant evidence." *Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir. 2001) (collecting cases). In other words, the Court will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 Fed. Appx. 738, 740 (7th Cir. 2010)).

The parties do not identify a particular medical opinion of Dr. Smith that was discounted by the ALJ. Indeed, the government maintains that Dr. Smith "did not provide a medical source opinion." (Memo, DE 22 at 4.) Under agency regulation, a medical opinion is defined as a statement from a physician "about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In her opinion, the ALJ made the remark about the recommendation for neck surgery before delving into Tarwacki's complaints of back, neck, shoulder, and arm pain. (R. at 23.) The ALJ concluded that the medical evidence was inconsistent with Dr. Smith's statement about Tarwacki's "diminished range of motion in her left shoulder."[4] (R. at 23–24.) Dr. Smith's statement concerns a physical limitation, and thus, falls comfortably under the agency's definition of a medical opinion.[5] Nevertheless, the ALJ did not discount Dr. Smith's opinion; rather she accepted his finding and discounted his treatment notes on other grounds.[6] (R. at 23–24.) Consequently, there is no "treating-physician rule"[7] issue for the Court to review with respect to Dr. Smith.

---

[4] On remand, the ALJ shall identify what "focal or neurological deficits" she is referring to. (R. at 23.)
[5] Although he is a surgeon, Dr. Smith has an ongoing treatment relationship with Tarwacki. (Pl.'s Br. at 6–7.) Therefore, Dr. Smith is deemed a treating physician. *See Bradley v. Barnhart*, 175 Fed. Appx. 87, 90 (7th Cir. 2006); *see also* 20 C.F.R. § 404.1502.
[6] While Dr. Smith's reports reference other limitations reported by Tarwacki, they are not "medical opinions." *Compare* § 404.1527(a)(2) (defining a medical opinion as "statements from physicians . . . that reflect judgments"), *with* § 404.1528(a) (defining symptoms as a claimant's "own description of . . . imparment[s]").
[7] *Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009).

8

Still, the question of whether the ALJ's remark about the recommended neck surgery in and of itself is reversible error requires further discussion. In disability benefits determinations, "[a]n ALJ's display of bias" is cause for remand. *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (collecting cases); *see also Keith v. Massanari*, 17 Fed. Appx. 478, 481–82 (7th Cir. 2001) (remanding for "the appearance of unfair bias"). In review of the evidence, the ALJ is presumed to be "unbiased." *Keith*, 473 F.3d at 788. The claimant may rebut this presumption by demonstrating that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id.* (citing *Liteky v. U.S.*, 510 U.S. 540, 556 (1994)). Tarwacki fails to meet this exacting standard. While stray remarks may be relevant evidence to show bias by a decision-maker in employment discrimination cases,[8] the Seventh Circuit has yet to extend the doctrine to social security appeals.[9] The Court finds no reason to adopt the doctrine here since Tarwacki fails to show a causal connection between the ALJ's comment and the denial of disability benefits. *See Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (stating that "stray remarks" must have some "nexus" between the statement and the adverse decision). Moreover, under *Liteky* an ALJ's expression of "dissatisfaction" does not establish bias. 510 U.S. 540, at 555–56. Consequently, the ALJ's dissatisfaction with the level of "symptomology" to justify Tarwacki's neck surgery would not result in a finding of bias.

Second, Tarwacki argues that the ALJ did not give good reasons for assigning "little weight" to Dr. Drew's opinion regarding work-preclusive limitations. (Pl.'s Br. at 11–12.) Under agency regulation, a treating physician's opinion is entitled to controlling weight if it is "well-

---

[8] *See e.g., Hooper v. Proctor Health Care, Inc.*, 804 F.3d 486, 854–55 (7th Cir. 2015) (ADA); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (EPA); *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 2000) (ADEA); *Cowan v. Glenbrook Sec. Servs. Inc.*, 123 F.3d 438, 443–44 (7th Cir. 1997) (Title VII).
[9] Although, the Seventh Circuit has used the term to describe an ALJ's reliance on isolated comments in a medical opinion, *Schmidt v. Colvin*, 545 Fed. Appx. 552, 556 (7th Cir. 2013), the Court is aware of only one circuit applying the doctrine to show bias in social security appeals. *See Qualls v. Astrue*, 428 Fed. Appx. 841, 848–49 (10th Cir. 2011).

9

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2). The ALJ must offer "good reasons" for not assigning a treating physician's opinion controlling weight. *Id*. If a physician's opinion is not given controlling weight, the ALJ must consider the following factors to determine what weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the physician's medical opinion; (4) the consistency of the physician's opinion; (5) the physician's specialization; and (6) other factors that might support or contradict the physician's opinion. *Id*.

In her opinion, the ALJ determined that Dr. Drew's findings were "significantly inconsistent with the record as a whole." (R. at 24.) The ALJ reasoned that the medical evidence: (1) consistently documented that Tarwacki's ambulatory ability was without significant abnormality; (2) was without indicia as to Tarwacki's inability to use her hands; and (3) indicated that Tarwacki maintained reasonable touch sensation in her hands. *Id*. However, the ALJ did not address the rest of Dr. Drew's opinion concerning Tarwacki's ability to sit, stand, lift, pull, bend, twist, squat, kneel, crouch, stoop, or climb. (R. at 272–73.) Instead, the ALJ dismissed this part of Dr. Drew's opinion based on Dr. Brill's and Dr. Ruiz's conclusions that Tarwacki could perform light duty work. (R. at 24.) The ALJ's reliance on these opinions to discount Dr. Drew's opinion was improper because they were based on Dr. Joneja's conditional findings. Dr. Joneja examined Tarwacki in February 2012, approximately six months before her neck surgery. (R. at 224.) At the time, Trawacki's medical record consisted of a 2008 MRI of her spine, "injections, physical therapy, and medication."[10] (R. at 233.) Aware of impending surgery,

---

[10] A 2010 MRI was also part of Tarwacki's medical record, but for some reason it was not before Dr. Joneja. Tarwacki's medications at the time included Norco, Daypro, Tekturna, and Vicodin. (R. at 233–37.)

Dr. Joneja conditioned his findings:

> [Tarwacki] does have significant degenerative disc disease documented on an MRI performed 12/23/08 (only report available for me to review). She is currently being treated for her chronic unrelenting pain and discomfort, and is scheduled to be evaluated by a spinal surgeon. I was unable to note any gross physical abnormalities on examination today. There was a profound level of pain displayed by [Tarwacki] on today's examination; which is documented above. The medical source documentations would be needed for review to substantiate the high-level physical impairments the claimant alleges. She needs to continue her treatment and her medical surveillance. *Reassessment would be required after she has been evaluated by the spinal surgeon, after further suggested treatments are utilized by the surgeon.*

(R. at 224–25) (italics added).

Three weeks later, Dr. Brill evaluated Tarwacki's ability to work despite her limitations. Dr. Brill's findings were based on the 2008 MRI, notes about Tarwacki's gait, and Dr. Joneja's opinion. (R. at 244–45.) In May 2012, Dr. Ruiz affirmed Dr. Brill's finding on the same evidence. (R. at 256–57.) Since then, Tarwacki was diagnosed with patella chondromalacia and muscle atrophy in her right knee, received additional MRI and x-ray testing of her spine, underwent spinal surgery, and was diagnosed with Hoffman's sign in her left hand. (R. at 266, 268, 270–71, 296, 310.) At no point after her neck surgery was Tarwacki reassessed by a state-consulting physician, nor did she seek an independent evaluation. Regardless of whether Tarwacki was represented by counsel, the ALJ has a "duty to develop a full and fair record and must order supplemental testing when the gap in the medical record is significant and prejudicial." *Warren v. Colvin*, 565 Fed. Appx. 540, 544 (7th Cir. 2014) (citing *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The facts of this case make it patently clear that the ALJ should have ordered additional testing.[11]

---

[11] On remand, if the ALJ does not afford Tarwacki's physicians controlling weight, she must consider the factors outlined by the Commissioner in § 404.1527(c)(2).

**(3)** *ALJ must factor subjective complaints of chronic and severe headaches*

Next, Tarwacki argues that the ALJ's residual functional capacity finding is erroneous because she failed to consider the limiting effects of her chronic and severe headaches. (Pl.'s Br. at 18.) At step-three of the disability analysis, the ALJ acknowledges disability if she finds that the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the ALJ finds that the claimant is not disabled, then the ALJ must assess the claimant's ability to work despite her limitations. 20 C.F.R. § 404.1545. This finding is then used to determine whether the claimant can perform her past work, and, if necessary, work in the economy. 20 C.F.R. § 416.920. In this case, the ALJ found that Tarawcki's was able to "perform light work as defined in 20 C.F.R. § 404.127(b)."[12] Regarding her complaints of headaches, the ALJ explained:

> As to [Tarwacki's] complaints of headaches, there is no indicia as to the objective diagnostic testing or treatment outside of her spinal complaints. Consequently, despite [Tarwacki's] documented cervical procedure, the undersigned does not find her clinical records support greater limitations than those found assessed herein.

(R. at 24.) Yet, having determined that Tarwacki's headaches "impose more than a minimal impact upon the [her] ability to engage in basic work activity," the ALJ must articulate the reasons for her decision "by building an accurate and logical bridge" from the evidence to her conclusions. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ cannot simply dismiss Tarwacki's complaints of headaches "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also Carradine v. Barnhart*, 360 F.3d 751, 754–55 (7th Cir. 2004). On remand, the ALJ shall consider Tarwacki's headaches consistent with SSR 16–3p.[13]

---

[12] This is the second time this ALJ has failed to complete her residual functional capacity finding. If there are exceptions to the type of work Tarwacki can perform they should be stated. Otherwise, the ALJ should remove "except" at the end of her conclusion.

[13] Effective March 16, 2016, the Administration superseded SSR 96–7p with SSR 16–3p.

**(4)** *Evidence propounded is not new*

Finally, Tarwacki presents additional evidence that was not before the ALJ. Sentence six of 42 U.S.C. § 405(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, for a sentence six remand, Tarwacki must show that her evidence is new and material, and that she had good cause for not providing it sooner. Tarwacki must also show that the evidence relates to the period before the disability hearing. 20 C.F.R. § 404.970(b). Here, the Appeals Council received and rejected Tarwacki's evidence, therefore it is not new. *Stepp*, 795 F.3d at 727 n.8 ("[E]vidence that has been submitted to and rejected by the Appeals Council does not qualify as 'new.'"). Moreover, Dr. Drew's and Dr. Smith's supplemental reports are based entirely on evidence that was available at the time of Tarwacki's hearing. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding").

**E.    Conclusion**

The Court AFFIRMS the Commissioner's decision in part, and REMANDS the case to the agency for further consideration consistent with this opinion.

SO ORDERED on March 30, 2016.

/s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE